Good morning, Your Honor. This is Brian Bocci on behalf of the appellant. As I've watched lawyer after lawyer go over their time, I guess I better reserve three minutes for rebuttal. Okay. Thank you. Preliminarily, I would like to point out that in addition to all the other things we're going to talk about this morning and all the claims and the elements of the claims, my client, Mark Hunt, is the only party in this action who did not commit wrongdoing in this matter. Brock Lesnar cheated and got caught and was sort of on the other way because it didn't want to know that Lesnar was cheating and was not going to be able to headline their UFC 200 card and was going to cost them tens of millions of dollars. My client complied with the contract he signed, expended tens of thousands of dollars of personal expense, training, traveling, doing everything that he was required to do to fight in the manner that UFC guaranteed him and yet somehow after the lower court's decision, he is left without recourse and candidly, among all the other reasons I'm going to cite to in this argument, that cannot be the right answer. This matter should be remanded because he does have claims and those claims were properly alleged and he was wrong. What was error about the determination that all of the damages he suffered were consequential damages that were barred by the contract? Because all the damages that were alleged were not consequential damages. I was going to deal with that in the contract section but I'm happy to deal with it now, Judge Rawlinson. At the end of the day, the damages that Mark Hunt suffered in addition to consequential damages that UFC has pointed out are barred, Mr. Hunt expended tens of thousands of dollars training, traveling for one event where he was ice skating uphill for lack of a better term. He was beaten before he walked into the ring against Brock Lesnar and another event that he was pulled out of primarily for the allegations of the complaints because he had shed a light on what UFC had done in the Lesnar fight. He relied upon the representations in both his contract and specifically, and I don't want to quote it because it's filed under seal but if you look at stuff 06 through 08 and the guarantees that are in the contract that my client is going to get a clean fight in all of his contractual fights, he didn't get that and he relied upon that to his detriment and the breach of contract caused him actual damages. He lost appearance fees that were booked before the fight based upon reliance that he was going to have a fair fight with Mr. Lesnar and he didn't. And then the record is, I mean, I don't think there's, we're at the pleading stage so when I say the record is clear, Mr. Lesnar got caught, he tested positive twice and was suspended and paid a nominal monetary fine for it but at the end of the day, it was my client who suffered. So these are not, and I know that Judge Dorsey was very hard on that in her decision and candidly, I disagree with it, that these are all consequential damages. I don't know and I don't think anybody knows. It is pure speculation as to whether my client would have defeated Brock Lesnar had he not cheated. That is absolute speculation but the damages incurred because he had to fight Brock Lesnar, he had to fight a fighter who had been cheating are absolutely not consequential and they are absolutely not speculative. He should have never been in the ring with Brock Lesnar. Brock Lesnar should have never been in that fight and had that not happened. Can I ask you a question? If you're still answering Judge Rawlinson's question, I apologize, you can continue. I didn't want to, it seemed to me... You've answered my question already. Oh, thank you. It just seemed to me that the breach of contract claim is a tough one, is an uphill battle. You know, your client got, I believe, $700,000 he fought. He says, you know, had I known that there was doping and I wouldn't have, you know, that the contract was therefore breached. I suppose it would require that your client remit the $700,000 he received and seek some consequential damages but, you know, it just struck me that it's almost more of a tort theory and it's either fraud in the inducement or just, you know, a garden variety fraud claim which you've already pled and it seems to me that once you get into, well, he would have won or he would have done better and he might have not lost endorsements because he might have done better, that just strikes me as being pretty speculative. What seems fairly clean to me, however, is the argument, you know, if I knew that this other person was doping, I simply wouldn't have gone forward because it would have been bad for my reputation. Doping is, you know, very effective in terms of giving unfair advantage to folks if that's the evidence and I simply wouldn't have gone forward with this fight and one can then at least, there's a fairly clean road in terms of damages and what that might have meant as opposed to sort of betting on the outcome of a fight with this, you know, these uncertainties. So, I just like your reaction to my sort of parried down version of what I think maybe is left in this case. And Judge Ferguson, I agree with most of, I actually agree with most of what you said. I would direct your honor to, and it's again, it's under seal, it's supplement 06, 07 and 08 as to the contract and here's why it is significant that he fought Brock Lesnar who was a doping fighter. The contract provides that my client was going to get paid $700,000 for the first fight regardless of who he fought. He was going to get that money whether he fought Brock Lesnar, whether he fought another fighter, whether he fought someone else. Later in the contract in paragraph, in sub 2, sub 3 and then eventually in 6.2, there are incentive clauses where my client had he had the opportunity to fight for a title, had this, had he gone in with a legitimate fighter in his first fight. There are performance bonuses. He is entitled to more money under their contract if he fights for a title and then if he becomes a champion, he's entitled to more money after that and then he's entitled potentially to a piece of the pay-per-view. So, when I say that he should not have fought Brock Lesnar at all, certainly he would not have been entitled to the $700,000 and then another $700,000 for another fight. What I'm saying is he would have gotten the $700,000 regardless of who he fought. He could have fought me. That would have been even more inequitable than fighting Brock Lesnar, but had he fought someone else, he would have gotten the same $700,000 and the contract provides that there would have been other opportunities. That's point one. Point two would be the guaranteed fight money is one component of the contractual damages, but he was going to get that regardless of who he fought. The guts of what I think was alleged and I think what stems from UFC's contract and again, I would point out that this is UFC's contract. I happen to know Mr. Williams drafted it. He did a very fine job drafting it for his client. It is a very good contract for UFC, but it is their contract and when we're talking about categories of damages that can or cannot be recovered under this contract, it doesn't say damages in there and it doesn't say that for a reason. Again, I would argue that to the extent that there's any ambiguity at all, it has to be conveyed against the drafters of the contract, but Mr. Lesnar, if he would not have had to fight Brock or if Mr. Hunt would not have had to fight Mr. Lesnar, he would not have expended the money, the training, the other things that he did to fight that fight and he certainly would not have expended the time, money, effort, tens of thousands of dollars in travel to be on the UFC 121 card that he was ultimately pulled off of because he complained about the Brock Lesnar situation. So I think that while I agree with you that certainly the fraud claim and in my opinion, the battery claim, which I'm going to get to in a second are much cleaner. I do think there's a contract and I come into good faith and fair dealing here and I think that their contract sets forth damages that are recoverable by my client for the breach irrespective of whether he was paid for the fight with Mr. Lesnar or not. I think that there are damages above and beyond that $700,000 in the contract and outside of the $700,000 that are recoverable for their breach. I don't know if that completely answered your question, Judge Pregerson, but if you have a follow-up to that, I'd be happy to address it. I mean, just thinking, I don't want to take too much time, but just thinking this through a an expert could testify that the doping provides some percentage of an advantage, 50%, 40%. And maybe, you know, maybe I'm wrong that it would have to be his only remedy is, you know, to not have fought at all. Maybe there can be a damages calculation based upon on those issues. I don't know. I don't know. It just seems tough. But I don't disagree that it's a hard analysis and it's a hard, it's a little bit of a burden to overcome, but I will suggest to your honor that I think the contract and I think expert testimony to your point as to the doping advantage, but certainly there are damages recoverable for the breach of contract and certainly for the battery. I look at the battery battery claims and I'm jumping to this right now because I see four and a half minutes left. The district court relied on Avila and relied on the Avila case as the sole reason to dismiss the battery and aiding and abetting battery claims against Lesnar and UFC based upon an assumption of risk theory. And I can't think of a better way to say it. That analysis is just wrong. I coach when I'm not doing this, I spent a lot of time managing baseball and every one of my kids that goes up and it goes dead bad in our games, knows that there's a chance that they're going to get hit, that the pitcher is going to either miss or is going to be mad at them and throw at their head or is going to throw at some other that they could get hit with a baseball. It's a fundamental part of the game. Okay. So when, when my kids are playing baseball or the college kids in Avila are playing baseball, when they go to home plate with that bat and that helmet, they know right then and there that they could get hit at any moment with a, with a pitch ball. When we're talking about assumption of the risk in a UFC fight, UFC and ZUFA contractually guarantees in their agreement that fighters are not going to have to assume that risk against the doping fighters, that they are going to get fights against clean fighters. And in just in case it wasn't crystal clear in the contract, Mr. White personally assured Mr. Hunt that he was going to get a clean fight, that Mr. Lesnar was going to be tested. Use some profanities because that's what Mr. White does from time to time. But, but that Mr. Lesnar was going to be tested. And what happened? Not only was he not tested until a week before the fight, he was tested and the results were held until after the fight was over. So that candidly UFC 200 wasn't going to lose another draw because they'd already lost John Jones for a doping violation and they didn't want to lose Mr. Lesnar on top of it. So this to me is not comparable to the Avila decision. This is a clear cut case of battery aiding and abetting battery and damages that ensued from the battery. And Mr. Hunt did not assume a reasonable amount of risk stepping into the ring with Mr. Lesnar because he had a contract and specific representations and that goes more to the fraud claim a little bit from Mr. White that he was not going to step into the ring with a doping fighter. So the assumption of risk analysis that Judge Dorsky took looking at Avila as compared to this situation in our opinion is misplaced. And it is a completely different standard and Mr. Hunt did not assume a reasonable amount of risk just because he's a UFC fighter. To that point as with the other claims and I kind of touched on this a little bit. I'm sorry I just have to interrupt you. I you know I watch a lot of baseball too. You coach. I don't think that deliberately trying to bean somebody is within the assumption of the risk of major league baseball. I mean what happens is the benches get cleared. You throw a hundred mile on a fastball at somebody's head. I don't think that's part of the game. You know yeah it happens and people do it. But you tell me that you can line up four batters and the pitcher can deliberately throw at each one of their heads and that's part of the assumption of the risk. No I don't think so. So I'm kind of surprised you go there. Okay I and to that point I think that Avila doesn't necessarily talk only and I'm more referring to the dissent which I tended to agree with more than more than the decision in that an intentional intentional pitch ball at someone's head or a negligent pitch ball at someone's head. Candidly when you're a batter when you're going up and you know these are college age kids and so I don't know what in Avila what was going through their minds. I don't think most people would. But when you go to the plate you know that there's a chance that you can get hit whether it's intentional or negligent or otherwise. I would refer to and Judge Briggerson sounds like you're a baseball fan. The Astros played the Dodgers earlier this season and those guys all went up to the batter's box and the Astros players one by one had a pretty good idea that someone was going to throw at him and eventually it happened. And Joe Kelly missed because he's not very good but he threw the ball behind one of the batter's heads and that was something but the Astros players knew that that was a possibility when they when they stepped into the batter's box that night. And I would submit that under Avila when when you play baseball generally whether it's intentional or negligent you know that that you're that there's a possibility that you could get hit. And I think this is a completely different situation specifically because the UFC contractually guaranteed that this was not a risk that he was going to have to assume. I'm a little over my time but I'm happy to follow up on on that question. All right let's let's go to the other side opposing counsel. Good morning your honors my name is Colby Williams. I represent Zufa LLC which will sometimes refer to as the UFC and Mr. Dana White the president of the company. I'm sharing time with my colleague Mr. Olson who will be arguing on behalf of Mr. Olson. I plan to argue for nine minutes so okay let's do it. Picking up with the let me see if I can quickly knock that out because something that has occurred in the oral argument that has continued to happen in this case both in the district proceedings below and in the opening brief and that is Mr. Hunt's claims morph. What you've heard Mr. Boshi arguing is that he was deprived of training expenses and traveling expenses. Traveling expenses was never an issue below anywhere and there's a reason for that. The contract between the parties in section 7.1 which is in the record provides that Zufa pays the traveling expenses for Mr. Hunt and that was done here. There was never a claim that that wasn't done. What we see is Mr. Hunt gets blocked on a particular argument and then seeks to expand it so I just want to clarify that for the record. There are three independent reasons why the contract claim fails. First and I won't spend a lot of time on it but it's emblematic of what I was just talking about. The issue of reliance damages was never presented below. Mr. Hunt never once argued that he was entitled to quote-unquote reliance damages. The argument that was presented to Judge Dorsey and that's why it's unfair to criticize her for addressing only consequential damages was that he lost his training expenses for UFC Fight Night 121. That occurred after UFC 200 and thus Judge Dorsey viewed it as something occurring after UFC 200 and thus was a consequential damage barred by the contract contractual language. That section is section 10.5. It clearly bars consequential damages. The fighter is only entitled to recover his purses. There is no dispute in this record that Mr. Hunt was paid for UFC 200 and I will go further and tell you as part of our summary judgment briefing it is also clear we provided every single bout agreement. Mr. Hunt was paid every purse for all six fights. There is no dispute about that whatsoever. The next reason and I think this is probably the most important reason why the contract claim fails is because reliance damages your honors are meant to put the complaining party in the position he she or it would have been in had the contract never been performed or had never come into fruition. You typically see this in the parties negotiate for a period of time one may do due diligence spend money on fees and the deal doesn't come to fruition. That's a situation where reliance damages may be appropriate. Not here. Not where Zufa has fully performed and paid every cent owed under the contract. So unless there's any further question on reliance damages I will go ahead and move on to what the the next focus of Mr. Boshi's argument was and that was the battery claim. Mr. Boshi says that the contract and Mr. White both guaranteed that Mr. Hunt would fight a clean fighter. Most respectfully that is not correct. No question that the contract provides that fighters are to honor the provisions requiring them to comply with all Nevada Athletic Commission regulations including rules prohibiting the use of that a fighter isn't going to take a prohibited substance. And can the fighters themselves reasonably assume that that's going to be a clean fight? I'm sorry Judge Piazza. Can the fighters themselves assume that it's going to be a clean fight in light of under the rules of the association they got to follow the Nevada? Sure your honor. I think that's certainly the goal. It's certainly Zufa's goal to eliminate. Why would it be unreasonable? Why would it be unreasonable? Well I think this case provides an example of it your honor. Mr. Hunt's entire complaint the RICO complaint that was such the focus below is premised on the fact that he had previously fought two fighters who came back testing positive for a prohibited substance. But that last fight was against Frank Mir in March of 2016. The very next month is when he signed his current promotional agreement with the company so he's clearly aware that that takes place. The first fight that he gets scheduled for under the new promotional agreement is with Mr. Lesner. If you look at the allegations in the complaint and the Sprewell case from this court teaches us sometimes a plaintiff can plead himself out of a claim by providing too much detail. And I would submit that's what Mr. Hunt did here because he recounts his repeated communications with Mr. White where he is raising questions about Mr. Lesner and his compliance with the testing program. And so I think in this case Mr. Hunt absolutely consented to this fight but while it may be an aspiration and one we tried very hard to accomplish that fighters are not going to test positive we ultimately can't control what a fighter puts in his or her body either knowingly or not knowing. So how does this argument relate to the fraud claim? How does it relate to the fraud claim? Yes. Well so the argument on the fraud go ahead. Judge Dorsey found that there was no proximate cause for the fraud claim and that was tied because again the focus below was on the RICO claims and when she found no proximate cause on the RICO claims she found no proximate cause on the fraud claims. But we would submit your honor that there is an additional basis upon which this court could affirm on the fraud claims and that is none of the statements identified in the complaint constitute an actionable misrepresentation that could have been relied on by Mr. Hunt. We have a slew of things included but they typically are statements Mr. Hunt made himself, statements that were made during the party's contract negotiations which now Mr. Hunt says well I would have wanted this that or the other thing in the contract. Well you didn't agree to that ultimately but you did agree to the contract. Nevada Supreme Court in the road and highway builder's case teaches us that you can't have a fraud claim based on allegations that contradict the contract. Can you have a fraud claim based on non-disclosure? You can if there's a duty of course you can your honor you certainly can have a but there's no allegation that there was a non-disclosure here because Mr. White isn't alleged to have known that Mr. Lesner was was testing positive. Mr. White's statements reflect that USADA the independent testing agency was testing Mr. White. Counsel wasn't there some inference that the tests were delayed sufficiently so that the results would not come back before the bout? Yes Judge Rawlinson that's that's certainly something that uh Mr. Hunt has argued and I'm glad you raised it because I want to get to that point and it may require me I want to tread carefully and then the court can tell me how to proceed. The allegation has been made that the first time Mr. Lesner was tested was on June 28th and that's the test that came back positive on July 15th after the fight. The record will reflect below as part of our motion to dismiss briefing we submitted a request for judicial notice where we submitted all of Mr. Lesner's testing and what I will represent to the court is that reflects far more testing than has been represented by Mr. Boshi. I don't want to go any further if unless the court has specific questions. Was there an exemption sought from any of the Was there an exemption sought from any of the testing requirements? Yes so typically when a fighter has been in the program and retires or leaves the sport for a period of time when he or she comes back they have to be in the program for a period of four months. Mr. Lesner was as is contemplated under the doping program Mr. Lesner was granted an exemption to that four-month testing window. Who requested the exemption? Whether it came from Mr. Lesner or the UFC decided to grant it unilaterally I don't know the answer to that question. But ultimately it was the UFC's decision correct? Correct and they were questioned about that by the Nevada State Athletic Commission. They provided a written response we also included that in our request for judicial notice. So let me ask you this if there had been no exemption granted wouldn't Mr. Lesner have been tested prior to the bout? Mr. Lesner was in fact tested prior to the bout on multiple occasions that's what I'm telling you we put into the record. Were the results revealed prior to the bout? The results were revealed for his first five tests all of which were negative. But not all of them. How long before the fact fight was his last test? He was tested the night of the fight July 9th 2016. Well but the results for that would not have come back before the fight. That's right and that's all of the other tests that preceded the fight how far in advance of the fight were those? All throughout the month of June. When was the most recent one when was the latest one in June? Prior to the one the night of the fight. June 28th. And what was the night of the fight? July 9th. Okay so between July between June 28th and July 9th there was no testing? That's what the record reflects your honor. I see I'm over my time and I don't want to take it. I'll give you time for positive those results could have been available prior to the fight they could have been whether the word is expedited or whatever they could have been made available prior to the fight then the positive result but it was not. Is that correct? In part your honor if I may quickly elaborate there were answers question yes there were five tests I just want my question answered on the two tests that came back positive first was June 28th could it have been expedited there is a procedure for expediting the part I can't answer your honor is whether it would have come back before the fight that's up to USADA the independent testing agency so I don't know how long that would have taken and there's no evidence go ahead go ahead judge breggers there is no evidence on that the record your honor okay there were two positive tests prior to the fight is that what you said one prior one the night of all fighters are tested the night of because if it turns out they typically the way this works with a fight is if you're going to be doping you're doing it farther in advance prior to a fight you you know you're going to be tested the night of the fight so typically those types of positive tests are rare because fighters are always tested the night of the fight but in fact this one came back positive and he was uh fined for it for it but it it really didn't matter because he still got his purse basically with you know a small amount deducted for the positive test he he did receive his purse he was fined he was suspended 500,000 out of 2.5 million uh I believe something like that I think it was 250,000 your honor 250,000 hey Mr. Williams I just have one last question for you uh switching over to the battery claim is that do I understand your position to be that he consent that the plaintiff consented to fight a fighter who was doped up that is our position your honor yes um very quickly the the judge found below that there was expressed consent through their promotional agreement she also found that there was consent based on consenting to the inherent risks in the sport and given the nature of the complaint that we were here on and given the specific representations that went back and forth between Mr. Lesnar excuse me Mr. White and Mr. Hunt it's clear that he knew that there may be an issue with Mr. Lesnar and there's one additional place where I believe consent is evidenced and the judge didn't rely on this but I believe that this court can because you can rely on on anything in the record that supports you know this issue and that would be the night of or for a particular fight fighters not only sign their promotional agreement they sang bout agreements for the specific fight at issue the promotional agreement is longer term the bout agreement is for the particular fight in question Mr. Hunt included the bout agreement as part of his complaint so it's incorporated by reference we submit we also submitted the bout agreement for UFC 200 in our motion to dismiss briefing as well as in the summary judgment briefing so that's in the record and it too contains the expressed consent that last point I'll make and it touches on something this but does Nevada law permit those kinds of waivers excuse me your honor does Nevada law permit parties to waive liability for intentional torts as an assumption of the risk your honor there isn't that I'm aware of a Nevada supreme court that addresses that question okay well the okay well the lower court seemed to indicate no right well the lower court relied on for that portion of the consent finding relied on a via the California supreme court case that's the baseball case that's the baseball case and isn't there something qualitatively different between doping and this history of baseball that we have with batters and pitchers and that rivalry I mean when baseball players are found to be doped they strip them of their titles they take away their batting championships there are significant consequences so are you saying they're the same thing I'm saying there that there are significant consequences for doping your honor absolutely in that respect I would say there are in addition to what the athletic commission does with the fines and the suspension Zufa has a set of consequences under the anti-doping policy as well that impacts I can tell you Mr. Lesnar has not fought for the UFC since this fight well okay go ahead I'm done go ahead judge Ferguson you're finished I was just saying that it just seems to me that if a fighter conceals the fact that they're taking a performance enhancing drug that potentially will not only cause them to win but perhaps do more damage to an opponent I have a hard time thinking that that is part of the assumption of the risk when you're dealing with you know this this context that's all okay let's go ahead Mr. William do you have a point you want to make I was going to say this is it thank you I understand that and all I would say is I think the analogy could apply across a number of sports whether it's a doping hockey player a football player or or a MMA fighter in this context if a particularly hard hit is leveled during one of those types of games is the the recipient of that hit going to be able to go back and and and seek you know to use the the tort liability to police those types of incidents within the sport and I would respectfully submit the answer is no your honor okay okay let's hear from Mr. your co-counsel yes thank you your honor Mr. Lesnar Mr. Olson yes thank you originally set out to have five minutes so I'll give it to you but I got to hold you to it thank you your honor David Olson on behalf of Brock Lesnar since we're talking about battery I think we have to put this into focus the question when we're looking at a battery claim is whether the defendant owes a duty to protect the plaintiff from an injury consent of course negates the duty the existence of a duty because the absence of a consent is an element of the battery here hunt has definitely pled in his own complaint that he consented to whatever injuries he received in the fighting cage first he expressly consented to accept the risk of injury and even death when he got into the MMA fighting cage if you look at exhibit b to his own supplemental complaint it's the promotional and ancillary rights agreement at paragraph 12 he specifically says fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury including death and he does hereby clearly unambiguously and explicitly accept all risks all risks means all risks so in addition it's your it's your position that that consent encompassed illegal doping it's my position that that consent encompassed any injury he might receive in the ring whether it's a fighter who has violated the anti-doping policy or not he he accepted the risk of death and seriously serious bodily injury he's not true if if the death came by virtue of combat with someone who had not been doping but the problem is the doping brings a new wrinkle into it and there's at least in terms of the pleading on the pleadings uh i am not certain that on the pleadings one could say that he consented to uh fight someone who had uh consumed performance enhancing drugs because his inquiries were to ensure that that hadn't happened so that's inconsistent to say he consented to something that he was assiduously seeking to avoid it's our position that the pleadings are just the opposite of that that in fact he did consent to potentially fight a fighter who will fail a drug test he admitted in his own complaint that on multiple occasions before he fought Brock Lesnar he had fought fighters who in turn tested positive he admitted that doping is an unfortunate reality in MMA that's a quote from his own complaint he admitted that he suspected Lesnar of cheating of juicing of doping prior to the fight yet with all of that knowledge he chose to get in that fighting cage anyway and because he did but didn't he also say that was the reason he was trying to get some reassurance that that that had not occurred in this case and with us support we're supposed to interpret the pleadings in the light most favorable to the pleader so how do we make the inference that you're telling us is compelled from that from that complaint we make the inference because although he admits that he sought insurance that there would be no doping or no violation of the anti-doping policy he never got that insurance he never got a guarantee he didn't contract for a guarantee the fighting contracts say that the fighters will adhere to the anti-doping policy that's all they say there's no guarantee that there will never be a violation and he knew there wouldn't be a guarantee like that i'm sorry i had a guarantee and assurance that's different than a guarantee and we're saying that if we look at the allegations in his own pleading we take those allegations as true he knew there was no assurance when he got into the fighting cage he knew that it had happened before he knew that it's likely to happen again he pleading that's what he said you make it sound like it's completely pointless for any fighter to rely on testing or that any other fighter is not going to be doped even in the face of making multiple requests is he clean has he been tested or words to that effect well in a sense your honor it is pointless because although not in the record one has to put this in perspective and the nature of the sport and the anti-doping policy the world anti-doping association publishes a list that has literally hundreds of compounds on it these compounds are not all performance enhancing drugs they include standard medications they include over-the-counter medications they include substances that may occur in food that you buy from the grocery store packaged food processed food a fighter can never be sure that he will pass a test no matter how much care he takes with what he puts into his body there will never be a guarantee no matter what the rules say no matter what ufc does no matter what water or usada does never be a guarantee that a fighter will pass a test that's just the reality of the sport so any representations to the contrary are pointless in essence yes the the fighters can do their best to try to adhere to the policy they can never guarantee that they will not fail a test you keep using the word guarantee but that's not the standard it doesn't there doesn't have to be a guarantee if there is a misrepresentation or an assurance that was um knowingly false that's enough there doesn't have to be a guarantee if if we look at the pleading there is no representation made by brock lesnar to mr hunt there is no representation made by brock lesnar in any agreement that provides any assurance that he will not fail in the test that representation was never made okay thank you counsel thank you thank you okay i'll give the plaintiff's appellant's lawyer one minute but you need to turn on your mic you need to unmute okay um i'm gonna try to blend three minutes into one um council's argument about mr lesnar and and there's no guarantee of anti-doping he he took stera he took performance enhancing drugs and got caught taking performance enhancing drugs this wasn't some supplement some dietary oh whoops i took the wrong over-the-counter drug he was caught cheating to get bigger stronger faster so that he could do put my client in a life-threatening situation that's the reality of what happened and the analogy and i'll go to judge preggerson's point with baseball there was a nice pitcher he threw an 88 mile an hour fastball and he started using steroids and he started throwing 100 mile an hour fastball and he hit a guy in the head and one of the reasons that baseball tests so diligently for performance enhancing drugs is because that situation creates a life-threatening possibility if you've got someone on performance enhancing drugs that can kill someone that's what happened here mr lesnar took performance enhancing drugs against the against the policies of the ufc and the nevada athletic commission for the sole purpose of getting bigger stronger faster and hurting potentially irreparably hurting my client and that's battery and in the ufc knew he was going to do it and they turned the other way and that's aiding and abetting battery and i've used up my minute so yes thank you thank you counsel we appreciate your arguments thank you judge the matter is submitted at this time
judges: Paez, Rawlinson, Pregerson